# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAM SQUARED AT TEXARKANA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ALEX M. AZAR II, <br><br> Defendant. | Case No. 1:18-cv-02542 (TNM) |

## MEMORANDUM OPINION

Medicare is a maze of statutes and regulations. One wrong turn and a Medicare provider becomes entangled in a system of penalties, appeals, and more regulations. Such is the fate of Post Acute Medical Squared at Texarkana, LLC (PAM Squared), a Medicare-certified long-term care hospital. Four years ago, PAM Squared made a routine, required submission of data to the Centers for Medicare & Medicaid Services (CMS). Or so it thought. As it turns out, the data was inputted but never received by CMS because of a typo in at least one of the data sets. Because of this typo, CMS imposed a two-percent Medicare payment reduction on PAM Squared for the coming year, costing the hospital almost $300,000. PAM Squared unsuccessfully appealed the penalty to both CMS and the Provider Reimbursement Review Board (PRRB or "the Board"). It now appeals to this Court, arguing that the Board's decision violated the Administrative Procedure Act (APA). The Court agrees.

Here, the agency—like PAM Squared—got lost in its own labyrinth of Medicare regulations. While affirming CMS's denial of reconsideration, the Board cited to and relied on an outdated final rule rather than the current regulation for CMS reconsideration. "One thing no agency can do is apply the wrong law to citizens who come before it." *Caring Hearts Pers.*

*Home Servs. v. Burwell*, 824 F.3d 968, 970 (10th Cir. 2016) (Gorsuch, J.) (cleaned up). Since this error infected the Board's decision, the Court will grant summary judgment in part to PAM Squared and remand this case to the Secretary of Health and Human Services.

**I.**

Consider first the relevant regulatory regime. Medicare Part A authorizes payments for institutional care, including care provided at Long-Term Care Hospitals (LTCH). *See* 42 U.S.C. §§ 1395c–1395i-5. These hospitals are statutorily required to submit to CMS "quality data" that measures, among other things, the incidence of certain diseases designated by the Secretary of Health and Human Services. *See* 42 U.S.C. § 1395ww(m)(5). After the hospitals input the data to the Centers for Disease Control and Prevention's National Healthcare Safety Network (NHSN), the NHSN sends completed data sets to CMS. *See* CMS LTCH Quality Reporting Program Manual Version 2.0, 5-10 (Nov. 2013), https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/LTCH-Quality-Reporting/-LTCH-Quality-Reporting-Archives.

Hospitals that fail to report this information in the "form and manner, and at a time, specified by the Secretary" will have their Medicare payments reduced two-percent the next year. 42 U.S.C. § 1395ww(m)(5)(A)(i), (C); 42 C.F.R. § 412.523(c)(4). So a hospital that fails to report data for 2015 will have payments reduced in Fiscal Year (FY) 2017.

The Secretary announced that the hospitals should report six categories of quality data for FY 2015, including the "Facility-Wide Inpatient Hospital-onset *Clostridium difficile* Infection (CDC) Outcome Measure." 80 Fed. Reg. 49,325, 49,750 (Aug. 17, 2015); A.R. at 103.[1] This

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system.

data measured each hospital's incidence of a dangerous bacterial infection called *C. diff*. *See* Def. Reply 2–4, ECF No. 26.

PAM Squared, as a LTCH, needed to submit all data specified by the Secretary. Compl. ¶ 10, ECF No. 1. Shortly after the final deadline for the 2015 data submission, CMS sent PAM Squared a "Notification of Non-Compliance." A.R. at 273. This notice stated that the hospital "failed to submit the required data" and that CMS would reduce its FY 2017 Medicare payment by two-percent. *Id.*

The hospital's staff immediately began reviewing the data to determine where the noncompliance occurred. A.R. at 123–24, 345. They verified that all the data appeared in the system, but for an unknown reason, CMS could not view the data. *Id*. at 134–35. The next day, Nurse Manager Brooke Buras contacted the NHSN to troubleshoot the issue. *Id.* at 346. After reviewing the hospital's submission, NHSN found the error: for at least one of the months from April to September 2015, someone had populated the "Location Code" field with the hospital's Medicare number and name rather than the phrase "FACWIDEIN- Facility-wide Inpatient (FacWIDEIn)."[2] *Id*. at 346. This typo prevented the NHSN system from forwarding PAM Squared's quarterly data to CMS. *Id.* at 138. In other words, PAM Squared had indeed submitted the data to one arm of the Department of Health and Human Services, NHSN, but NHSN never sent the data to another arm of the Department because of the typo. No one at NHSN alerted PAM Squared to the problem, at least until after the submission deadline had

---

[2] PAM Squared should have known this was a mistake because in a paragraph buried on the fourteenth page of the September 2014 "NHSN e-News" newsletter—one of the many guidance documents LTCHs are expected to adhere religiously to—NHSN stated that *C. diff.* data should be reported "using the FacWideIN location choice." A.R. at 92; A.R. at 8 & n.27 (PRRB decision citing the newsletter).

passed. At NHSN's suggestion, Buras corrected the Location Code and saved the data. *Id.* at 347. CMS could then access the hospital's reports. *Id.*

PAM Squared asked CMS to reconsider the two-percent payment reduction. A.R. at 299–300. PAM Squared submitted screenshots showing that it had entered the data into NHSN before CMS's deadlines. *Id.* at 306–27. CMS responded with a form letter informing the hospital that it had "reviewed [PAM Squared's] reconsideration request" but was "upholding the decision to reduce the annual payment" for FY 2017. *Id.* at 260.

The hospital next turned to the Provider Reimbursement Review Board. A.R. at 254. The Board conducted a full evidentiary hearing, *id.* at 111–47, and ultimately upheld CMS's decision to impose the two-percent payment reduction, *id.* at 10. The Secretary declined to review the Board's decision, rendering that decision final. *Id.* at 2–3; 42 U.S.C. § 1395oo(f). PAM Squared now contends that the Board violated the APA. *See* Pl. Mot. for Summ. J. 2, ECF No. 21.

## II.

Courts may review the PRRB's final decisions under the APA's standards of review. 42 U.S.C. § 1395oo(f). Normally, a court will grant summary judgment when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). But Rule 56's standards do not apply to a court's review of a final agency action under the APA. *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006). In these cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of

4

review." *Sierra Club*, 459 F. Supp. 2d at 90 (citing *Richard v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)).

Under the APA, the Court will set aside the Board's decision only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Grant Med. Ctr. v. Hargan*, 875 F.3d 701, 705 (D.C. Cir. 2017) (quoting 5 U.S.C. § 706(2)(A)). Though a court's review of agency action under the arbitrary and capricious standard is "narrow," it must determine whether the agency "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). If the agency's reasoning is deficient, the "court should not attempt itself to make up for such deficiencies" or "supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* But it may still "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (cleaned up).

### III.

PAM Squared appeals the Board's final decision to uphold a two-percent reduction of the hospital's Medicare payment for FY 2017. The Board's decision can be taken in three parts. First, it determined independently—based on briefing and an evidentiary hearing—that PAM Squared failed to submit the data in the correct form and manner, as required by statute. A.R. at 8. Next, it rejected PAM Squared's invitation to provide equitable relief because nothing authorized the Board to "reduce the full impact of the two percent reduction." *Id.* at 9. Finally, it determined that CMS's denial of reconsideration was not arbitrary or capricious. *Id.* at 9–10. PAM Squared now challenges all these conclusions under the APA.

5

## A.

The Court begins where the Board ended: with its conclusion that the CMS reconsideration was not arbitrary or capricious. Though much of PAM Squared's case turns on this part of the Board's decision, the Secretary argues that the Board's review of the CMS reconsideration is irrelevant for two reasons. Def. Suppl. Br. 8–10, ECF No. 31.

First, PAM Squared cannot challenge CMS's reconsideration denial, he argues, because that was an interim agency decision that has no further relevance after the Board rendered its own final opinion. Def. Suppl. at 8–9. True enough. Federal courts are empowered to review final, not interim, agency actions. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659 (2007). But PAM Squared is not asking the Court to directly review CMS's reconsideration decision. To be sure, PAM Squared believes that CMS's reconsideration was arbitrary and capricious, and it argued as much before the Board. A.R. at 38–47. But here, PAM Squared is seeking review of the *Board's* legal conclusions, not CMS's. Pl. Suppl. Br. 9–11, ECF No. 29. The Court can certainly review whether the *Board* violated the APA when it affirmed CMS's decision. *See, e.g.*, *Dillmon v. NTSB*, 588 F.3d 1085, 1090–92 (D.C. Cir. 2009) (determining that the National Transportation Safety Board arbitrarily and capriciously reversed an ALJ's decision without addressing the ALJ's credibility determination).

Second, even if PAM Squared is "really challenging the PRRB's conclusion[s]," the Secretary urges that the Court need not consider whether the Board rightly affirmed CMS's reconsideration. Def. Suppl. at 9–10. This is because the Board conducted a hearing *de novo* and reached its own conclusions. *Id*. The Board indeed conducted an evidentiary hearing, A.R. at 111–47, and began its opinion by independently concluding that PAM Squared failed to submit the required data, *id.* at 8. That said, the Board apparently did not think it was enough to

begin and end at that point. It went on to address PAM Squared's other arguments, including the hospital's request for equitable relief and its contention that CMS's decision was deficient. *Id.* at 9–10.

The Board itself hinted at why it included this analysis: CMS's reconsideration process follows specific rules and regulations that do not directly apply to the Board. *Id.* at 9 n.29. CMS's reconsideration process must comply with 42 C.F.R. § 412.560(d) and—PAM Squared argues—the rules outlined in 79 Fed. Reg. 49,854, 50,317 (Aug. 22, 2014). *See* Pl. Suppl. Reply 4–8, ECF No. 32. PAM Squared insists that these rules allow *CMS* to excuse noncompliance if the hospital could establish "extenuating circumstances" explaining its failure to submit the data. *See* Pl. Suppl. Reply at 4–8. As the Board observes, it is "unclear whether the *Board* has the authority to consider [these circumstances]" or whether it is strictly "bound by the relevant statute and regulations which" impose the payment reduction without exception. A.R. at 9 & n.29.

Why does any of this matter? Because it means that the Board's decision cannot stand solely on its independent conclusion that PAM Squared failed to submit the data reports. Even if the Board freshly considered all of PAM Squared's evidence that extenuating circumstances justified its noncompliance, the Board may not have had the authority to grant relief, as CMS could. In other words, the only question that the Board answered *de novo* was "Did PAM Squared submit the required data to CMS?" To that, the Board said, "No." But the Board answered an additional question and, in fact, applied a different standard of review to evaluate CMS's decision: did CMS act *arbitrarily and capriciously* when it failed to address PAM Squared's justifications for noncompliance? A.R. at 9. A reversal of CMS's reconsideration on

7

this basis was a separate avenue through which PAM Squared could obtain relief. The Board's answer, then, is still relevant here.

**B**.

The Board decided that CMS did not act arbitrarily and capriciously. PAM Squared now argues that this conclusion was, itself, arbitrary and capricious. And the Court agrees.

The Board started its analysis by reciting the features of CMS's reconsideration process—that it was a voluntary procedure where CMS could reverse the payment reduction if a hospital provided proof of compliance or "a valid or justifiable excuse for non-compliance." A.R. at 9. The trouble is, this is all wrong.

After prodding from the Court, the Secretary now admits that the final rule from which the Board draws this process does *not* apply to PAM Squared's request for reconsideration. *See* Def. Suppl. at 11; Pl. Suppl. Reply at 8. The Board cited the preamble of a 2013 final rule governing requests for reconsideration of *FY 2015* Medicare payment determinations. A.R. at 9 (citing 78 Fed. Reg. 50,496, 50,886–50,887 (Aug. 19, 2013) ("2013 Rule")). This rule prescribed a *voluntary* CMS reconsideration process (before appealing to the PRRB) and established a standard of review for CMS's decisions: "We may reverse our initial finding of non-compliance if: (1) the LTCH provides proof of compliance . . . or (2) the LTCH provides adequate proof of a valid or justifiable excuse for non-compliance." *Id.* at 50,886–50,887.

But PAM Squared appealed CMS's *FY 2017* payment determination. A.R. at 254. CMS adopted an "updated process" for reconsidering these payment determinations. 79 Fed. Reg. 49,854, 50,317 (Aug. 22, 2014) ("2014 Rule"). The 2014 Rule announced that CMS reconsideration is mandatory before appealing to the PRRB. *Id.* at 50,318. And this new rule clarified that the request for reconsideration must include documentation showing either "full

8

compliance" or "*extenuating circumstances* that affected noncompliance[.]" *Id.* at 50,317 (emphasis added). CMS later codified the 2014 Rule's reconsideration process in 42 C.F.R. § 412.560 ("2015 Regulation"). *See* 80 Fed. Reg. at 49,755 ("We did not propose to change the process or requirements for requesting reconsideration, and we refer readers to [79 Fed. Reg. at 50,317–50,318].").[3]

So the 2015 Regulation, not the 2013 Rule, governs PAM Squared's reconsideration request. How could the Board confuse the agency's own rules? It seems that the Board struggled to "keep up with the furious pace of [CMS's] rulemaking." *Caring Hearts*, 824 F.3d at 970. From 2013 to 2015, CMS annually churned out new rules tweaking its own reconsideration process. *See* 78 Fed. Reg. at 50,886–50,887; 79 Fed. Reg. at 50,317–50,318; 80 Fed. Reg. at 49,755. Until 2015, the reconsideration procedures were tucked away on the 300th or 400th page of a much more expansive Medicare rule's preamble. And the Board was just confused, accidentally applying a rule governing reconsideration of CMS's FY 2015 *payment determination* to a hospital who failed to submit 2015 *data*. A.R. at 9.

Now, after originally defending the Board's opinion as accurate in the merits briefing, *see* Def. Mot. Summ. J. 27–28, ECF No. 22, the Secretary belatedly admits that the Board erred by citing the 2013 Rule.[4] Def. Suppl. at 11. But, citing no law, he suggests "no harm, no foul," *id*.

---

[3] Notably, this regulation does not contain language—as the 2013 and 2014 Rules did—requesting documentation of a "justifiable excuse" or "extenuating circumstance" explaining noncompliance. *Compare* 42 C.F.R. § 412.560(d) *with* 78 Fed. Reg. at 50,886 *and* 79 Fed. Reg. at 50,317. The Secretary argues that this means that CMS has no standard of review for reconsideration. Def. Suppl. at 7. PAM Squared, on the other hand, suggests that the regulation incorporated the 2014 Rule which, according to the hospital, *did* establish a new standard of review. Pl. Suppl. Reply at 4–8. Since the Board cited the wrong regulation, it never addressed this question. Whether the Board reviewed CMS's decision under the wrong standard of review or a standard that no longer exists is immaterial here. Either way, the Board applied the wrong law in PAM Squared's adjudication. *See Caring Hearts Pers. Home Servs.*, 824 F.3d at 970 ("One thing no agency can do is apply the wrong law to citizens who come before it." (cleaned up)).

[4] Even now, the Secretary's contrition is half-hearted. The Secretary tries to shift the blame for this error onto PAM Squared, claiming that "PAM Squared injected confusion into [the Board's] analysis" by citing the wrong rule in its briefing and that the Board "adopted PAM Squared's mistake." Def. Suppl. at 11. Not so. Whether or not a

9

at 11—an ironic argument given that this case comes to the Court because he intends to dock a hospital $278,052 because of a typo, *see* Def. Mot. at 13 n.8. PAM Squared retorts that this mistake is more than "harmless error;" it renders the Board's decisionmaking arbitrary and capricious. Pl. Suppl. Reply at 13–15.

There is a fine line between "harmless error" and "arbitrary and capricious." The distinction turns on whether the agency's mistake affected the outcome of its decision or prejudiced the plaintiff. *PDK Labs, Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). A missed citation or clerical mistake may be "harmless error." *See, e.g.*, *Sierra Club v. Wagner*, 581 F. Supp. 2d 246, 260 (D.N.H. 2008). And so may citing an incorrect version of a regulation when the applicable language does not change between versions. *See, e.g.*, *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 n.2 (D.D.C. 2013).

By contrast, when a mistake infects the agency's analysis or the outcome of the adjudication, it crosses the line into arbitrary and capricious territory. Consider *PDK Laboratories Inc.*, where the D.C. Circuit reversed and remanded a decision by the Drug Enforcement Agency. 362 F.3d at 799. A DEA administrator's analysis diverged from agency precedent but failed to mention or distinguish that precedent. *Id.* at 798. Though the DEA acknowledged its error, the agency contended that it was "of no moment, because the result of the agency proceedings would not have changed." *Id.* at 799. The court rejected that argument. *Id.* The administrator's analysis was flawed. Had the administrator properly engaged with precedent it was "entirely possible that, on remand, he [would] decide to adhere" to past policy,

---

regulated entity should be dinged for misdirecting a regulatory through its own the maze, PAM Squared's briefing before the Board consistently cites the 2014 Rule for the CMS reconsideration process. *See* A.R. at 229 ("CMS refers to . . . 79 Fed. Reg. at 50,317–19, for an explanation of the reconsideration process that applies to the FY 2017 payment determinations."). When PAM Squared *does* mention the 2013 Rule, it is only to explain the evolution of CMS's reconsideration procedures. *See, e.g.*, A.R. at 246 (explaining that the 2013 Rule's "justifiable excuse" standard of review was "modified somewhat" by the 2014 Rule which requires documentation of "extenuating circumstances"). The PRRB members have only themselves—and their fellow bureaucrats—to blame.

resolving the plaintiff's dispute. *Id.; see also Chen v. GAO*, 821 F.2d 732, 734–36 (D.C. Cir. 1987) (finding an agency's decision arbitrary and capricious under 31 U.S.C. § 755, even when "otherwise supported by substantial evidence," because the agency applied the wrong standard of review).

Other judges in this District have followed suit. For instance, in *St. Vincent's Medical Center v. Burwell*, the court found that the PRRB's misinterpretation of its own regulation was not "harmless error." 222 F. Supp. 3d 17, 22–23 (D.D.C. 2016). The Board determined that it *must* dismiss a hospital's untimely appeal. *Id.* at 19. Yet the relevant rules and regulations stated only that the Board *may* dismiss an untimely appeal. *Id.* at 21. The Secretary argued that since the Board still could dismiss the appeal, this misstatement of the law was harmless error. *Id.* at 23. The court rejected this argument because "the Board's decision was not premised on an exercise of [its] discretion" but on the conclusion that it must dismiss the appeal. *Id.* The court is limited to reviewing the "grounds invoked by the agency." *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Since those grounds were "plainly contrary to law," the court granted summary judgment to the plaintiff and remanded to the agency. *Id.* at 23; *see also, e.g.*, *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d 103, 111–12 (D.D.C. 2018) (remanding when the Fish and Wildlife Service arbitrarily and capriciously "applied an improperly heightened standard").

Then-Judge Gorsuch likewise encountered a case in which CMS—also in the Medicare context—wound up "confused about its own law." *Caring Hearts*, 824 F.3d at 970. There, CMS refused to reimburse a hospital for certain "homebound" services. *Id.* The problem was, "in reaching its conclusions CMS applied the wrong law." *Id.* In fact, it applied a regulation that was only drafted and implemented years after the services in dispute were rendered. *Id.* Judge

11

Gorsuch invoked Madison's warning that "It will be of little avail to the people, that the laws are made by men of their own choice, if the laws be so voluminous that they cannot be read, or so incoherent that they cannot be understood; . . . or undergo such incessant changes that no man, who knows what the law is to-day, can guess what it will be to-morrow." *Id.* at 969 (quoting The Federalist No. 62, at 381 (Clinton Rossiter ed., 1961)). The court vacated and remanded the decision, because "an agency decision that loses track of its own controlling regulations and applies the wrong rules in order to penalize private citizens can never stand." *Id.* at 970, 977.

So too here. The Board's reliance on the 2013 Rule was more than a wrong citation or clerical error. It, in fact, quoted and cited exclusively from that rule. It based its entire analysis of CMS's decision on the assumption that the 2013 Rule governs. A.R. at 9–10. It not only misstated CMS's standard of review for reconsideration, *id.* at 9, but used that incorrect standard to determine independently that PAM Squared was not entitled to equitable relief, *id.* at 9 n.29 (noting that it is "unclear whether the Board has the authority to consider a 'justifiable excuse,'" but that "the Provider has not documented any . . . problem that may have constituted a justifiable excuse"). And it incorrectly concluded that CMS reconsideration is a voluntary— rather than mandatory—process. *Id.* at 9.

True, no specific language in the 2015 Regulation undermines the Board's conclusion that CMS could permissibly use "uniform language in a form letter." A.R. at 10. And perhaps it may have reached the same decision following the correct regulation or the 2014 Rule. But it is also possible that, on remand, the mandatory—rather than voluntary—nature of CMS reconsideration will alter the agency's review. Or that, as the hospital argues, the 2014 Rule and the Regulation provided CMS a new standard of review that is favorable to PAM Squared.

12

It is not the Court's role to guide the agency through its own regulations. Nor should it hypothesize how the correct regulation might alter the Board's analysis. The Court must evaluate the rationale that the agency itself has given. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. And here the Board's reasoning came about by reviewing the CMS reconsideration through the tainted lens of the wrong regulation. The Court should not "attempt itself to make up for [the Board's] deficiencies." [5] *Id.*

## C.

What then is the proper remedy? PAM Squared argues that the Court should not remand to the agency. Pl. Suppl. at 12–15. Instead, it should reverse the PRRB's decision and "declare that Plaintiff is entitled to the full Medicare Annual Payment Update for FY 2017." *Id*. at 15. The hospital contends that a remand is unnecessary where "there is not the slightest uncertainty as to the outcome of an agency proceeding." *Id*. at 12 (quoting *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995)). But here the Court has more than the "the slightest uncertainty" about the agency's decision on remand. Perhaps the typo does justify the full two-percent penalty. But perhaps, now applying the proper standard, the Board will come to a different conclusion. The appropriate remedy here is to remand the case to the agency. *See Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal.").

---

[5] Because the Court finds that the Board applied the wrong rule to its assessment of the CMS decision, it need not address the other arguments raised by PAM Squared, including that the Board's decision found no support in substantial evidence and that the Court should reverse the Board's decision on equitable grounds.

# IV.

"[E]ach of us has his cross to bear." Franz Kafka, *The Trial* 134 (Breon Mitchell trans., 1998). For the Board members and others at the Department, theirs is that if they create a Kafkaesque regulatory labyrinth for hospitals, they must be able to navigate it themselves. Because the Board relied on the incorrect regulations to affirm CMS's reconsideration decision, PAM Squared is entitled to summary judgment. The Court will therefore grant PAM Squared's motion in part, deny the Secretary's motion, and remand this matter to the agency for further proceedings. An appropriate Order will issue.

Dated: January 22, 2020                             TREVOR N. McFADDEN, U.S.D.J.